## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

**LARRY CLAY &**
**LASHAWNTE HOLLOMAN-CLAY**

        **Plaintiffs,**

**v.**

**U.S. BANK, N.A. AS SUCCESSOR**
**TRUSTEE TO BANK OF AMERICA**
**NATIONAL ASSOCIATION AS**
**SUCCESSOR BY MERGER TO**
**LASALLE BANK NATIONAL**
**ASSOCIATION AS TRUSTEE FOR**
**MERRILL LYNCH FIRST FRANKLIN**
**MORTGAGE LOAN TRUST**
**MORTGAGE LOAN ASSET-BACKED**
**CERTIFICATES SERIES 2007-1**
60 Livingston Avenue
St. Paul, MN  55107

And

**BANK OF AMERICA, NA**
100 North Tyron Street Blvd.
Coppell, TX  75019

And

**NATIONSTAR MORTGAGE LLC**
8950 Cypress Walters Blvd.
Coppell, TX  75019

        **Defendants**

**Case No.**     17-586

**REQUEST FOR JURY TRIAL**

### COMPLAINT

Plaintiffs Larry Clay & Lashawnte Holloman-Clay ("Mr. & Mrs. Clay" or "Plaintiffs"), by their attorneys, Phillip Robinson and the CONSUMER LAW CENTER LLC, hereby file this Complaint and jury demand against Defendants U.S. Bank, N.A. as Successor Trustee to Bank of America National Association as Successor by Merger to Lasalle Bank National Association as Trustee For Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates Series 2007-1 ("FFMER 2007-1"), Bank of America, NA ("BANA"), and Nationstar Mortgage LLC ("Nationstar")(collectively "Defendants") and state as follows:

## I.  INTRODUCTION

1.  This matter involves the unfair and deceptive practices of FFMER 2007-1, by its authorized agents BANA and Nationstar, which materially failed to comply with Maryland law and concealed from Mr. & Mrs. Clay the true facts concerning their February 23, 2013 agreement with BANA and as a result FFMER 2007-1 has been unlawfully enriched and has collected sums from Mr. & Mrs. Clay it was not entitled to collect under Maryland law.

2.  When Mr. & Mrs. Clay became aware of facts which indicated that the Defendants may have deceived them, which was less than three years before the commencement of this action, they attempted to investigate further and notified Nationstar of certain errors but Nationstar on behalf of FFMER 2007-1 improperly responded by feigning ignorance of the inconsistencies represented in the February 23, 2013 agreement and prior foreclosure action taken by FFMER 2007-1 against the Plaintiffs.

3.     Neither FFMER 2007-1 nor its authorized agents, BANA or Nationstar ever disclosed to the Plaintiffs related directly or indirectly to the February 23, 2013 agreement that: (i) FFMER 2007-1 had actually proceeded to foreclosure sale and was the record owner of Plaintiff's former home; (ii) Plaintiffs had a legal right to cancel the February 23, 2013 agreement under Maryland law; and (iii) FFMER 2007-1 had already collected sums it claimed to be owed by the Plaintiffs by virtue of its prior foreclosure sale which Plaintiffs have not been given credit.  In fact Nationstar implicitly suggested in writing to Mr. Clay on November 14, 2016 that it was not responsible for any acts or omissions of BANA and BANA's foreclosure firm, i.e. the BP Fisher Law Firm f/k/a The Fisher Law Group LLC ("Fisher"), on behalf of FFMER 2007-1 that may have occurred.

4.     The Plaintiffs have canceled the February 23, 2013 agreement pursuant to Maryland law.

## II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C.A. 1332 since the parties are residents of different states and the amount in controversy exceeds $75,000.00.

6.      The Court has declaratory authority over the controversy pursuant to 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, and MD. CODE ANN., CTS. & JUD PROC. § 3-409.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court occurred in this District.

## III.     PARTIES

8.      Mr. & Mrs. Clay were the owners of the real property subject to this action located at 3804 Charred Oak Drive, Fort Washington, MD 20744-1310 (the "Property"). When they acquired the Property on or about February 9, 2007, Mr. & Mrs. Clay took out a loan from First Franklin Financial Corporation ("Clay Loan") that was secured by a first lien Deed of Trust (and recorded in the land records of Prince George's County)("Clay DOT"). The Clay Loan was soon thereafter sold to and bundled together into a mortgage backed security--i.e. Defendant FFMER 2007-1. Due to a prior foreclosure sale conducted on behalf of FFMER 2007-1 against the Plaintiffs and the Property on December 4, 2009, FFMER 2007-1 became the owner of the Property. *See* FFMER 2007-1 Deed Recorded at Book 32045, Page 466 (recorded in the land records of Prince George's County)("FFMER 2007-1 Deed"). Mr. & Mrs. Clay resided at the Property as their primary residence at the time of the origination of the Clay Loan and that loan was used for personal purposes.

9.      Defendant FFMER 2007-1 is a mortgage backed security that was issued on or about March 27, 2007. The sponsor/seller of FFMER 2007-1 at the time of its formation was Merrill Lynch Mortgage Lending, Inc. The Depositor was Merrill Lynch Mortgage Investors, Inc. and the Lead Underwriter was Merrill Lynch, Pierce, Fenner & Smith Inc. Upon information and belief FFMER 2007-1 was formed in Delaware and its principal place of business is in Minnesota.

10.      Defendant BANA was the authorized mortgage servicer/agent related to Mr. & Mrs. Clay and acted on behalf of FFMER 2007-1 in all communications and collection activities with the Plaintiffs until July 1, 2013. BANA had served in that role

since at least November 2008 by virtue of its acquisition of Home Loan Services, Inc. which later merged with BANA.   All sums collected by BANA from Mr. & Mrs. Clay were conveyed by it to FFMER 2007-1 for the benefit of its beneficiaries.   BANA is a national bank and its principal place of business is in North Carolina.

11.   Defendant Nationstar became the authorized mortgage servicer/agent related to Mr. & Mrs. Clay and acted on behalf of FFMER 2007-1 in all communications and collection activities with the Plaintiffs on July 1, 2013.   All sums collected by Nationstar from Mr. & Mrs. Clay were conveyed by it to FFMER 2007-1 for the benefit of its beneficiaries.   Nationstar is incorporated in Delaware and its principal place of business is in Texas.

## IV.   FACTS

12.   Within four years of its formation, over 57% of the thousands of loans securitized into FFMER 2007-1 were either delinquent, in default, and/or had been foreclosed upon.   FFMER 2007-1 was previously subject to allegations of violations of state and federal securities laws as well as common law fraud made by the Federal Housing Finance Agency (FHFA) (in the United States District Court for the Southern District of New York), as conservator of Fannie Mae and Freddie Mac, involving BANA, Countrywide Financial, Merrill Lynch, and certain named individuals totaling approximately $5.83 billion.   That litigation resulted in a settlement that provided for an aggregate payment of approximately $9.33 billion by BANA that includes the litigation resolution as well as a purchase of securities by BANA from Fannie Mae and Freddie Mac.

13.     Through its appointed agents at Fisher, FFMER 2007-1 commenced a foreclosure action against Mr. & Mrs. Clay and the Property in the Circuit Court for Prince George's County, Maryland on January 15, 2009 (Case No. CAE09-01144)("Foreclosure Case").  That case resulted in a Final Order of Ratification (entered by the state court on June 30, 2010) of a foreclosure sale that occurred on December 4, 2009 at 9:44AM since Mr. & Mrs. Clay did not oppose the sale before it occurred.  No person appealed the Final Order of Ratification or sought to change the judgment at any time.

14.     Since December 4, 2009 FFMER 2007-1 has been the owner of the Property with all rights and obligations of that ownership. *Campbell v. Council of Unit Owners of Bayside Condo.*, 202 Md. App. 241, 250, 32 A.3d 149, 154–55 (2011).

15.     On or about July 28, 2010, Fisher filed on behalf of FFMER 2007-1 a Motion for Judgment of Possession in Foreclosure Case which was granted by the state court on August 19, 2010.  No person appealed the Order Granting Motion for Judgment of Possession or sought to change the judgment at any time.

16.     On September 29, 2010 Fisher recorded the FFMER 2007-1 Deed in the land records of Prince George's County which terminated any remaining interest conveyed in the Clay DOT.  The FFMER 2007-1 Deed confirmed that FFMER 2007-1 paid the sum of $136,500 for the Property at the foreclosure sale of the Property to acquire it.  No person has ever objected to the FFMER 2007-1 Deed or disclaimed its authenticity.

17.     On or about January 21, 2011, an Auditor's Account of Mr. & Mrs. Clay's mortgage account owned by FFMER 2007-1 was presented to the state court in the Foreclosure Case.  That audit was ratified by the state court in a final order entered on February 7, 2011 ("Ratified Audit Order").  No person appealed the Ratified Audit Order or sought to change the judgment at any time.  The Ratified Audit Order credited the sum of $136,500 toward Mr. & Mrs. Clay's mortgage account that had been paid as part of the foreclosure sale.

18.     Fisher initially sought and obtained (on March 4, 2011) a Writ of Possession of the Property on behalf of FFMER 2007-1 from the state court but no eviction ever occurred.

19.      On January 7, 2013 BANA's authorized representative, i.e. Jana Newport, wrote to Mr. & Mrs. Clay and informed them that they "[had] been approved for a principal reduction loan modification under the U.S. Department of Justice and State Attorneys General national mortgage settlement.  If [they] accept[ed] the modification, [Mr. & Mrs. Clay's] mortgage [would] soon be permanently modified with a more affordable monthly payment."  This loan modification offer was represented by BANA to Mr. & Mrs. Clay as a way they could retain the Property in their name and was conditioned upon BANA receiving two copies of the signed modification from Mr. & Mrs. Clay by January 17, 2013 and them making their first modified payment by February 1, 2013.  BANA summarized the terms of the modification as follows:

| Summary of Your Modified Loan | | |
| --- | --- | --- |
| **Your New Principal Balance is calculated as follows:** | | |
| Current Principal Balance | $413,803.36 | This is the unpaid principal balance before we modify your loan. |
| Escrow Advances (+) | $30,785.71 | Advances we have made on your behalf for payment of taxes & insurance. |
| Past Due Interest (+) | $178,942.67 | Unpaid and deferred interest. |
| Unapplied Funds (-) | $1,751.04 | Amounts previously paid but not credited to the loan. This amount is typically any portion of a trial payment that has been paid but not yet applied to the loan. |
| Combined Principal Balance (=) | $621,780.70 | Total amount owed before we modify your loan. |
| Principal Reduction (-) | $369,930.20 | We have forgiven this amount which means it will be completely removed from your loan balance and you will no longer owe this amount. Please consult a tax advisor to determine how this forgiveness impacts your situation as we will report this amount to the Internal Revenue Service. |
| New Principal Balance (=) | $251,850.50 | This is the new principal balance on your modified loan. |

The current interest rate of 9.999% will stay in effect for the life of your modified loan.

Your final payment date, which is your existing maturity date, is 03/01/2037.

20.     In the January 7, 2013 modification offer BANA knowingly misstated the Combined Principal Balance due from Mr. & Mrs. Clay in that it did not credit all the compensation paid to FFMER 2007-1 on the Clay Loan (i.e. no credit was noted for the $136,500 paid by virtue of the state court approved foreclosure sale and audit) and the Combined Principal Balance claimed in this offer was materially different than what was claimed due after the foreclosure sale by the Order of Ratification of Report of the Auditor by the state court (which equaled $339,221.10).

21.     Mr. & Mrs. Clay did not know that BANA concealed the credit from proceeds of the foreclosure sale and from them until a period less than a year before the commencement of this action.  Mr. & Mrs. Clay also did not know that the Combined Principal Balance claimed due in the modification offer from Mr. & Mrs. Clay was materially and irreconcilably different than the sum determined by the Order of

Ratification of Report of the Auditor until a period less than a year before the commencement of this action.   Because BANA represented the Loan Modification Agreement as approved by the "U.S. Department of Justice and State Attorney General national mortgage settlement," it was reasonable for Plaintiffs to have not inquired to determine if BANA has misstated the actual sums claimed due and whether Plaintiffs had been given credit for the sums claimed due on the account.  No reasonable person would believe that BANA would knowingly seek sums not validly due and fail to give credit to sums it collected and were approved by the state court in the Ratified Audit Order in contravention with BANA's settlement with state attorneys general.

22.     In reliance to BANA's offer described in ¶ 19 and not knowing that they did not actually own the Property and in fact that FFMER 2007-1 owned the Property,  Mr. & Mrs. Clay accepted BANA's January 7, 2013 offer thinking this was a way for them and their family to retain their home for them at a sustainable monthly sum.  As part of their acceptance and trust that BANA was making them a bona-fide modification offer on behalf of FFMER 2007-1, Mr. & Mrs. Clay timely returned two copies of the signed modification agreement to BANA and also made a timely, first payment on the modification.

23.     At the time of the modification agreement BANA knowingly concealed from Mr. & Mrs. Clay that they were not the owners of the Property by virtue of the recorded FFMER 2007-1 Deed prepared by Fisher on its behalf and the foreclosure sale.

24.     BANA sent Mr. & Mrs. Clay a countersigned modification agreement on January 28, 2013.  In this response BANA again knowingly concealed from Mr. & Mrs.

Clay that they were not the owners of the Property by virtue of the FFMER 2007-1 Deed prepared by Fisher on its behalf and the foreclosure sale.

25.     In reliance upon the modification agreement, Mr. & Mrs. Clay continued to make monthly payments to BANA while it acted as the authorized agent for FFMER 2007-1 and then after to Nationstar as FFMER 2007-1's authorized agent through January 2017.  These total payments exceed $120,000.00.

26.     In furtherance of the knowing concealment of the true facts about the ownership of the Property from Mr. & Mrs. Clay while continuing to collect sums from them that made it appear they were the owners, BANA executed and recorded in the land records of Prince George's County an Assignment of Deed of Trust (recorded at Book 35385, Page 47) from it to Nationstar which was dated September 26, 2013.

27.     In additional and in furtherance of the concealment of the true facts about the ownership of the Property from Mr. & Mrs. Clay while continuing to collect sums from them that made it appear they were the owners, BANA and Nationstar continued to send Mr. & Mrs. Clay monthly mortgage statements.

28.     Based upon the representations and statements of BANA and Nationstar Mr. & Mrs. Clay reasonably believed that they were the owners of the Property.  They only learned of certain irregularities in May of 2016 when they inquired about the possibility of refinancing the loan to a more favorable interest rate and they were told that that was not possible based on title issues.

29.     Upon learning of these irregularities they attempted to discovery the true facts from Nationstar who continued to conceal all of the relevant, material facts.  One

representative communicated with Mr. Clay approximately in August 2016 that the deed would not be transferred back into the names of the Plaintiffs until it was paid off.  In an effort to try to understand the irregularities, Plaintiffs also communicated with multiple counsel who did not understand how FFMER 2007-1, BANA, and Nationstar structured the modification and could not explain the situation.

30.     Under the Real Estate Settlement Procedures Act and its implementing regulations, Mr. Clay wrote to Nationstar on October 26, 2016 to notify it of certain errors and request certain information in a Qualified Written Request ("QWR"). Specifically, Mr. Clay wrote:

> It has come to our attention that you and your predecessor Bank of America, NA have mislead us  into believing that we still own our home by extending us a loan modification for the full balance of our loan even though you have not rescinded your prior foreclosure. We do not understand why you would mislead us in this way and are concerned that you simply plan to bait and switch us and not honor our loan modification agreement. *See* Exhibit 1. Please correct the public records and your records to show us to be the owners of our home.

> Also, we would like to request copies of all documents you received from Bank of America, NA at the time the servicing transferred to you. In addition, we would like all documents you have received since the transfer from Bank of America, NA about our loan.

> In addition, I would like copies of your records showing all communications for my account including recordings of all calls between myself and you from May 2014 through the present. Your representatives have explained to me in these calls that I am the owner of my home.

31.     Nationstar, intending that Mr. Clay would rely upon its written response, responded to Mr. Clay's October 26, 2016 QWR, in correspondence dated November 14, 2016 from Sol Duree (a Customer Relations Specialist at Nationstar) with largely conclusory, improper responses including the following: "Some of the information (sic) you have including call recording requested does not pertain directly to servicing of the loan, does not identify any specific servicing errors, and/or is considered propriety and confidential."

32.     Nationstar's November 14, 2016 response also represented that FFMER 2007-1 owned Mr. Clay's loan but it "[would] not be able to assist with" any of Mr. Clay's questions about the loan modification, payment adjustments, and foreclosure.  In addition, Nationstar concealed the true facts from Mr. Clay by representing to him that it has "no records of a prior foreclosure."  Yet, despite this representation, Nationstar claimed to have conferred with Fisher and determined that "the foreclosure sale in the year 2011 was rescinded."  This last statement was knowingly false because the foreclosure sale that occurred in 2009 (as described in ¶ 13) and was never rescinded by the state court or anyone else.

33.     Nationstar intended for Mr. Clay to rely upon its November 14, 2016 response to him.  This fact is demonstrated by its statement in the correspondence that it claimed "the payment history appears to be reported accurately to the main credit repositories" but in fact the Nationstar's payment history does not give any credit for the sum paid at the foreclosure sale of the Property to FFMER 2007-1 and therefore materially inaccurate.  In addition, Nationstar represented to Mr. Clay that the Clay Loan "and related documents were reviewed and found to comply with all state and federal guidelines that regulate them."  However, as later discovered and alleged herein once they retained counsel, the loan transaction violates multiple Maryland laws including but not limited to COM. LAW § 12-101, *et seq.* and REAL PROP. § 10-101 *et seq.*

## COUNT I
## VIOLATION OF COM. LAW § 12-101, *et seq.*
### (Against All Defendants)

34.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

35.     Pursuant to Fed. R. Civ. P. 8(d)(2), this claim is presented if the finder of fact determines that the underlying Clay Loan as modified by the Loan Modification Agreement is a loan transaction and was not a land installment contract.

36.     The Clay Loan as modified by the Loan Modification Agreement is not satisfied.

37.     The unsecured Clay Loan as modified by the Loan Modification Agreement (*see* ¶ 19 *supra*), was a forbearance of money claimed due by FFMER 2007-1, included interest and compensation in the sum of the amount paid to FFMER 2007-1 (i.e. $136,500, by virtue of the ratified foreclosure sale and audit of the state court (*see* ¶¶ 16-17, 20 *supra*)) which was not accounted for or credited against the sum then claimed due by FFMER 2007-1.

38.     Since the loan balance of the modified, unsecured loan at the time it was agreed to by the BANA on behalf of FFMER 2007-1 equaled just $251,850.50, the interest charged by BANA on behalf of FFMER 2007-1 for the modification equaled 23.96% which violates the rates permitted under Maryland law. Md. Const. art. III, § 57; Com. Law § 12-102; and Com. Law § 12-103.

39.     FFMER 2007-1 knew it commenced and conducted the foreclosure sale and it purchased the Property at the foreclosure sale and Mr. & Mrs. Clay were entitled to the credit of the sum paid at the foreclosure sale on their mortgage account.  FFMER 2007-1's violation of Com. Law § 12-103 was therefore knowing and willful and with reckless disregard of the true facts and state court judgments confirming these facts at its own request and therefore constitutes a crime. Com. Law § 12-122.

13

40.    None of the Defendants have ever disclosed to Mr. & Mrs. Clay any application of the credit due to them of the $136,500 collected, by virtue of the ratified foreclosure sale and audit of the state court (*see* ¶¶ 16-17, 20 *supra*), to the principal of the Clay Loan but each were required to do so pursuant to Com. Law § 12-106.   The failure to make this mandatory disclose is a crime.   COM. LAW § 12-114(b).

41.    Pursuant to Com. Law § 12-114, FFMER 2007-1, BANA, and Nationstar must forfeit to Mr. & Mrs. Clay "[t]hree times the amount of interest and charges collected in excess of the interest and charges authorized by [COM. LAW § 12-101, *et seq.*]."   That sum exceeds $75,000 and includes: (i) the $136,500 collected, by virtue of the ratified foreclosure sale and audit of the state court (*see* ¶¶ 16-17 *supra*) and (ii) the more than $120,000.00 in interest payments made by the Plaintiffs to BANA and Nationstar on the loan modification.

42.    The Loan Modification of the Clay Loan (*see* ¶ 19-21 *supra*) did not include the disclosure to Mr. & Mrs. Clay as required by Com. Law § 12-116.

Wherefore, pursuant to Com. Law § 12-114, Plaintiffs request a judgment in their favor on their usury claims, jointly and severally against each of the Defendants, as follows:

A.   A money judgment in favor of Mr. & Mrs. Clay equal to an amount which is three times the amount of interest and charges collected directly and indirectly by BANA and Nationstar on Clay Loan on behalf of FFMER 2007-1 as modified by the Loan Modification Agreement, which is a sum

that exceeds $75,000 and is in excess of the interest and charges authorized

by COM. LAW § 12-101, *et seq.*;

B. Grant Mr. & Mrs. Clay their reasonable attorney fees and costs; and

C. Grant Mr. & Mrs. Clay attorneys' fees and costs, and grant Plaintiffs such

other and further relief as this court finds necessary and proper.

**COUNT II**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT**
**("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41**
**(Against Nationstar)**

43.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

44.     Pursuant to Fed. R. Civ. P. 8(d)(2), this claim is presented if the finder of
fact determines that the underlying Clay Loan as modified by the Loan Modification
Agreement is a loan transaction and was not a land installment contract.

45.     Nationstar has a duty of care under 12 U.S.C.A. § 2605, 12 C.F.R. §
1024.36, and 12 C.F.R. § 1024.35 to acknowledge in writing the QWR (including notices
of error and requests for information) sent to it by Plaintiff Larry Clay within five days
and to respond to the QWR in writing within 30 days (unless it seeks an extension of not
more than 15 days) after conducting a reasonable investigation.

46.     Plaintiff Larry Clay's QWR described herein at ¶30 was sent to the address
published by Nationstar for such communications and Nationstar received the QWR.

47.     Nationstar also had duty of care under 12 C.F.R. § 1024.36 and 12 C.F.R. §
1024.35 to conduct a reasonable investigation of Mr. Clay's QWR and it failed to do any
reasonable investigation as demonstrated by (i) its failure to provide the information

sought in the QWR related to its own communications with Mr. Clay and BANA related to the servicing of the loan; (ii) lack of communication with BANA about the nature of the information it received from BANA upon the servicing transfer which as demonstrated herein shows a foreclosure sale had occurred, and (iii) pattern of making claims in writing and on the telephone to the Plaintiffs (which it intended for them to rely upon) by its authorized representatives which it knew were false and misleading—i.e. that no foreclosure sale had occurred.

48.    By failing to provide the documents/information requested (including electronic copies of the telephonic calls) and failing to conduct a reasonable investigation into the QWR, Nationstar has violated 12 U.S.C.A. § 2605(e), 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35.

49.    As a direct and proximate result of these violations Plaintiffs are entitled to their actual damages pursuant to 12 U.S.C.A. § 2605(f)(2)(A) which include (i) Plaintiffs' own investigation of obtaining copies of the records of the state court foreclosure proceedings (at a cost of approximately $150.00) which contradict the representations made by Nationstar in its incomplete response to Mr. Clay's QWR, (ii) Plaintiffs' frustration and anger as a result of receiving Nationstar's incomplete and false response to Mr. Clay's QWR which refused to convey legal title back in Plaintiffs' names and was based on a knowing misstatement of the true facts about the prior foreclosure sale.

50.    Upon information and belief Nationstar has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 for borrowers like the Plaintiffs.  This belief is supported by:

a.     Mr. Clay's own experience with Nationstar as described herein;

b.     A class action lawsuit and settlement currently pending in the United States District Court for the Southern District of Florida, Case No. 1:14-cv-20726-JAL, alleging RESPA violations for hundreds of similarly situated borrowers as the Plaintiffs by Nationstar;

c.     A jury verdict and judgment entered against Nationstar concerning its violations of 12 U.S.C.A. § 2605 in the matter of *Geoffrion v. Nationstar*, U.S.D.C for E.D. of TX (Case No. 4:14-CV-350)(filed September 10, 2015);

d.     The well pled allegations against Nationstar pled in the Circuit Court for Anne Arundel County, Maryland records in the matter of *Devan v. Hilditch, Hilditch v. Nationstar* (Case No. 02-C-14-189541); and

e.     The well pled allegations against Nationstar pled in the Circuit Court for Anne Arundel County, Maryland records in the matter of *Clark  v. Robinson, Robinson v. Nationstar* (Case No. 02-C-14-189541).

WHEREFORE, pursuant to 12 U.S.C.A. § 2605 Plaintiff respectfully requests that the Court (i) enter judgment in favor of Plaintiff Larry Clay against Nationstar for its violations of 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35 by failing to properly respond to Plaintiff Larry Clay's QWR, (ii) award actual damages and losses sustained by the Plaintiff Larry Clay related to Nationstar's failure to properly respond to and conduct a reasonable investigation into Plaintiff Larry Clay's QWR in the amount of $4,000 and statutory damages in

the sum of $1,000, (iv)  award Plaintiff's costs, (v) award attorney's fees incurred by Plaintiff; and (vi) grant Plaintiff such other and further relief as the Court finds necessary and proper.

## COUNT III
## MARYLAND CONSUMER PROTECTION ACT ("MCPA"),
### MD. CODE ANN., COM. LAW § 13-101 *et seq.*

### (Against all Defendants)

51.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

52.     Pursuant to Fed. R. Civ. P. 8(d)(2), this claim is presented if the finder of fact determines that the underlying Clay Loan as modified by the Loan Modification Agreement is a loan transaction and was not a land installment contract.

53.     The loan servicing practices described herein of the Defendants, as set forth herein, are governed by the Consumer Protection Act, MD. CODE ANN., COM. LAW. § 13-101, *et seq.*

54.     COM. LAW. § 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The servicing and collection of Mr. & Mrs. Clay's loan by the Defendants and the modification involves both the extension of credit and the collection of debts.

55.     COM. LAW. § 13-303 also prohibits unfair or deceptive trade practices in the sale or provision of consumer services, such as those provided by BANA and Nationstar.

56.     The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading

oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.  MD. CODE ANN., COM. LAW §§13-301(1) and (3).

57.     Nationstar's acts and omissions described herein, and including but not limited to (i) failing to timely and accurately respond to Mr. Clay's lawful efforts to mitigate this situation and return title in the Property to Mr. & Mrs. Clay, (ii) seeking and demanding sums not legally or contractually due from Mr. & Mrs. Clay in violation of Maryland's usury law or giving them credit for payments made on the Loan as confirmed by the state court judgments, (iii) failing to conduct any reasonable investigation of Mr. Clay's disputes whatsoever and even communicating with the prior servicer, i.e. BANA, constitute unfair and deceptive trade practices in violation of MD. CODE ANN., COM. LAW §§13-301(1)(3) and MD. CODE ANN., COM. LAW §§13-303(4)(5).

58.     Alternatively pursuant to Fed. R. Civ. P. 8(d)(d)(2), Nationstar's deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from Mr. & Mrs. Clay, with the intent that they rely upon the same during the servicing of their loan and related consumer services as described herein, also violated MD. CODE ANN., COM. LAW § 13-301(9).   Specific facts identifying the particulars of this alternative claim under the MCPA are exemplified *supra* in ¶¶ 29, 31-33.

59.     BANA's acts and omissions described herein, and including but not limited to (i) offering a loan modification to Mr. & Mrs. Clay, under the framework of the

national mortgage settlement, that knowingly failed to credit payments made on Mr. & Mrs. Clays' loan and was materially in excess of what they actually owed, (ii) seeking and demanding sums not legally or contractually due from Mr. & Mrs. Clay in violation of Maryland's usury law or giving them credit for payments made on the Loan as confirmed by the state court judgments, (iii) extending the offer of a loan modification on the basis that the Plaintiffs were the owners of the Property when they were not and concealing that fact from the Plaintiffs, and (iv) service transferring and representing the the Clay Loan to Nationstar as if it were a traditional loan modification secured by the Property constitute unfair and deceptive trade practices in violation of MD. CODE ANN., COM. LAW §§13-301(1)(3) and MD. CODE ANN., COM. LAW §§13-303(4)(5).

60.     Alternatively pursuant to Fed. R. Civ. P. 8(d)(d)(2), BANA's deception, fraud, false premise, misrepresentations, and knowing concealment and omission of material facts from Mr. & Mrs. Clay, with the intent that they rely upon the same during the servicing of their loan and related consumer services as described herein, also violated MD. CODE ANN., COM. LAW § 13-301(9).   Specific facts identifying the particulars of this alternative claim under the MCPA are exemplified *supra* in ¶¶ 19-21, 23-24, 26-27.

61.     FFMER 2007-1's failure to supervise its authorized agents BANA and Nationstar in their servicing of the Clay Loan infected the transaction unfairly and deceptively in violation of MD. CODE ANN., COM. LAW §§13-301(1)(3) and MD. CODE ANN., COM. LAW §§13-303(4)(5).   Had FFMER 2007-1 conducted any review of the true facts the damages and losses incurred by Mr. & Mrs. Clay would not have occurred.

62.     Mr. & Mrs. Clay reasonably relied upon the material acts and actions of BANA and Nationstar acting with FFMER 2007-1's express authority as exemplified *supra* in ¶¶ 21, 22, 25-30.  As demonstrated herein (i) they continued to pay BANA and Nationstar in response to and in reliance to its demands that they do so, (ii) Mr. Clay notified Nationstar of certain of its errors in reliance to and in response to its continued false and deceptive threats and failure to properly credit Plaintiffs' payments.  BANA's and Nationstar's acts and omissions are simply unreasonable, unfair, and deceptive—even those acts after this action commenced which demonstrate it simply wishes to avoid any review of its improper mortgage servicing practices.

63.     Had the Defendants not acted unfairly and deceptively, Mr. & Mrs. Clay would not have suffered the damages and losses they have incurred including: (i) payment of sums in excess of the usury limits on the Clay Loan as modified, (ii) failure to properly account for all payments made on the loan including the payment paid as a result of the foreclosure sale, (iii) emotional damages in Mr. Clay which accrued since he became aware of the irregularities in May 2016 manifested by depression, weight gain, increased blood pressure, and marriage troubles, and (iv) emotional damages in Mrs. Clay which accrued since she became aware of the irregularities in May 2016 manifested by depressive tendencies requiring medication, stomach issues, hospitalizations, and marriage troubles.

64.     Mr. & Mrs. Clay have pled sufficient facts to put the Defendants on notice as to the claims against it as exemplified by ¶¶ 13-21, 23-24, 26-28, 31-33 (i.e. dates of key acts and representations of the Defendants), and ¶¶ 39-42, 45, 47-50, 54-62 (i.e. the

regulatory and statutory duties of the Defendants which they simply ignored and thereby infected the subject transaction to ensure its failure).

WHEREFORE, Plaintiffs respectfully request the Court enter judgment pursuant to the MCPA in favor of Plaintiffs and against Defendant jointly and severally in a sum in excess of $75,000 for actual damages and losses, attorneys' fees and costs, and grant Plaintiffs such other and further relief as this court finds necessary and proper.

**COUNT IV**
**MARYLAND LAND INSTALLMENT CONTRACT ACT**
**MD. CODE ANN., REAL PROP. § 10-101 *et seq.***

65.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein.

66.     Pursuant to Fed. R. Civ. P. 8(d)(2), this claim is presented if the finder of fact determines that the underlying Clay Loan as modified by the Loan Modification Agreement is a land installment contract and is not a loan transaction.

67.     Neither FFMER 2007-1 nor anyone on its behalf has ever recorded the Loan Modification Agreement in the land records of Prince George's County.

68.     Mr. & Mrs. Clay have notified FFMER 2007-1 that they have canceled the Loan Modification Agreement pursuant to Real Prop. § 10-101(f) on February 27, 2017.

69.     Since (i) Mr. & Mrs. Clay did not own the Property at the time of the Loan Modification Agreement and it was owned by FFMER 2007-1 by virtue of the ratified foreclosure sale and the FFMER 2007-1 Deed and (ii) Nationstar on behalf of FFMER 2007-1 has refused to correct the title to the Property and return title now back to Mr. &

Mrs. Clay until they pay-off the entire Clay Loan as modified, the Loan Modification Agreement is merely a land installment contract as that term is defined in Real Prop. § 10-101(c).

70.     The Property was intended by FFMER 2007-1, BANA, Nationstar, and the Plaintiffs to be the Plaintiffs' home as part of the Loan Modification Agreement and meets the definition in Real Prop. § 10-101(e).

71.     Mr. & Mrs. Clay are purchasers as defined by Real Prop. § 10-101(e).

72.     FFMER 2007-1 is a Vendor as defined by Real Prop. § 10-101(c). Nationstar and BANA are FFMER 2007-1's authorized Vendor agents in all their communications with the Plaintiffs.

73.     The $136,500 paid by Mr. & Mrs. Clay by virtue of the ratified foreclosure sale and audit approved by the state court constitutes a down payment as that term is defined in Real Prop. § 10-101(b).

74.     The Loan Modification Agreement did not include all the information and notices required Real Prop. § 10-103 including that required by § 10-103(a)(4), § 10-103(a)(5), § 10-103(a)(7), and § 10-103(b).

75.     Neither BANA nor Nationstar (while acting on behalf of FFMER 2007-1) have applied the payments made directly and indirectly by Mr. & Mrs. Clay as required by Real Prop. § 10-103(c).   More specifically, the Loan Modification Agreement charged an interest rate in excess of the rate permitted by § 10-103(c)(4) and also failed to be applied correctly to the Plaintiffs' indirect payment of the sum of $136,500 paid by

Mr. & Mrs. Clay by virtue of the ratified foreclosure sale and audit approved by the state court.

76.     Neither BANA, Nationstar, or FFMER 2007-1 have sent to the Plaintiffs the statements required by Real Prop. § 10-107.

77.     Pursuant to Real Prop. § 10-102(f), the Clays are entitled to an Order and judgment to a sum equal to "all payments and deposits made on account of or in contemplation of the [Loan Modification Agreement]." That sum exceeds $75,000 and includes: (i) the $136,500 collected, by virtue of the ratified foreclosure sale and audit of the state court (*see* ¶¶ 13-17 *supra*) and (ii) the more than $120,000.00 in interest payments made by the Plaintiffs to BANA and Nationstar on the loan modification before it was canceled.

WHEREFORE, Plaintiffs request a judgment in their favor on their land installment act claims, jointly and severally against each of the Defendants, as follows:

A.     Pursuant to Real Prop. § 10-108, Mr. & Mrs. Clay are entitled to a judgment of appropriate relief to enforce the cancelation of the Clay Note as modified by the Loan Modification Agreement and appropriate other equitable relief related to Defendants' violations of Real Prop. § 10-101, *et seq.* described herein;

B.     Pursuant to Real Prop. § 10-102(f), Mr. & Mrs. Clay are entitled to an Order and Judgment requiring the return of the sums identified in ¶ 19, 22, 25, 41, 77;

C.      Grant pursuant to Real Prop. § 10-108, Mr. & Mrs. Clay's court costs

and an award of reasonable attorney fees; and

D.      Grant Plaintiffs such other and further relief as this court finds necessary

and proper.

Respectfully Submitted,

*/s/Phillip R.  Robinson*
Phillip R. Robinson
Bar No. 27824
**CONSUMER LAW CENTER LLC**
8737 Colesville Road, Suite 308
Silver Spring, MD  20910
Phone:     (301) 448-1304
Email: phillip@marylandconsumer.com
*Attorneys for Plaintiffs*